IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 03–cv–01299–EWN–BNB


PENNY LANDREY,
KARI VASQUEZ, and
SUE E. DADY,

      Plaintiffs,

v.

CITY OF GLENWOOD SPRINGS,
DAN ROGERSON, and
SABRINA HOFFMEISTER,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a Title VII case.  Plaintiffs Penny Landrey, Kari Vasquez, and Sue Dady allege that

Defendants City of Glenwood Springs, Dan Rodgerson, and Sebrina Hoffmeister[1]: (1)

discriminated against all Plaintiffs by maintaining a hostile work environment and retaliated

against Plaintiffs Landrey and Vasquez in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.* (2006); and (2) engaged in various state law violations.

This matter is before the court on Defendants City of Glenwood Springs's and Hoffmeister's

---

      [1]I gather from the parties' submissions that the caption in this case mistakenly identifies
Dan Rodgerson as "Dan Rogerson" and Sebrina Hoffmeister as "Sabrina Hoffmeister."  (Answer
and Jury Demand [filed Sept. 25, 2003].)

"Motion for Summary Judgment," filed April 1, 2005.[2]  Jurisdiction is premised upon federal

question, 28 U.S.C. § 1331 (2006).

**FACTS**

*1.*      *Factual Background*

In or about November 2001, Defendant City of Glenwood Springs (hereinafter

"Defendant City") opened a new recreational facility (hereinafter the "Center").[3]  (Mem. Br. in

Opp'n to Defs.' the City of Glenwood Springs and Sebrina Hoffmeister's Am. Mem. Br. in Supp.

of Mot. for Summ. J., Ex. 2 at 39 [Landrey Dep.]  [filed Apr. 25, 2005] [hereinafter "Pls.'

Resp."].)  Plaintiffs Landrey, Vasquez, and Dady all worked at the Center.  (Compl. and Jury

Demand ¶¶ 9–12 [filed July 18, 2003] [hereinafter "Compl."].)  In or around July 2001,

Defendant City hired Defendant Rodgerson as its recreation director and Plaintiffs' supervisor.

(Compl. ¶ 14; Mot. for Summ. J., Defs.' the City of Glenwood Springs and Sebrina Hoffmeister's

Am. Mem. Br. in Supp. of Mot. for Summ. J., Ex. A–2 at Attach. 64 [Hoffmeister Aff.] [filed

Apr. 1, 2005] [hereinafter "Defs.' Am. Br."])

---

[2]Defendant Rodgerson did not join in this motion.  For the purposes of this Order, except where otherwise indicated, all references to "Defendants" signify Glenwood Springs and Hoffmeister, and not Rodgerson.  Where necessary, I refer to the individual Defendants.

[3]Despite their rambling prolixity, both Plaintiffs' and Defendants' submissions are remarkably silent as to several basic background factual matters.  Where the interest of clarity so required, this court has reluctantly (and sometimes fruitlessly) searched through the nearly impenetrable thicket of irrelevancy proffered by the parties to find dates, locations, and other facts with which to obtain and convey the most general understanding of this case.  The parties should realize that it is not this court's task to tend to their every jot and title.

a.      *Facts Relating to Plaintiff Landrey*

Plaintiff Landrey worked for Defendant City from February 1999 through approximately April 29, 2002.  (Compl. ¶ 9; Defs.' Am. Br., Ex. A–2 at Attach. 64 [Hoffmeister Aff.].)  At the Center, Plaintiff Landrey worked as head customer service representative and supervisor of various personnel.  (*Id.*)  Initially, Plaintiff Landrey described her working relationship with Defendant Rodgerson as "very friendly."  (Defs.' Am. Br., Undisputed Statement of Facts ¶ 22; *admitted at* Pls.' Resp. to Statement of Undisputed Material Facts ¶¶ 22.)  By the end of December 2001, Plaintiff Landrey had complaints about Defendant Rodgerson.  (*Id.*, Ex. A–1 at 67 [1/13/04 Landrey Dep.].)[4]

About two weeks into his employment, thus sometime in or around July 2001, Defendant Rodgerson relayed information regarding his intimate relationship with his wife and asked Plaintiff Landrey about her marriage.  (*Id.*, Undisputed Statement of Facts ¶ 28, Ex. A–1 at 26 [1/13/04 Landrey Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 28.)  Plaintiff Landrey suggested that Defendant Rodgerson take his wife away for a weekend.  (*Id.*)

Most of Plaintiff Landrey's remaining allegations are not specific as to dates or time periods.[5]  Sometime before the Center opened in November 2001, Defendant Rodgerson said to her "there's nothing uglier than a fat woman in stretch pants."  (Pls.' Resp., Statement of Additional Disputed Facts ¶ 2; *admitted at* Defs.' Reply, Resp. Concerning Additional Disputed

---

[4]In what can only be called a marginally successful effort to conform with my local rules and transform their motion into an intelligible work, Defendants have divided Exhibit A–1 to their amended brief into several subsections consisting of deposition excerpts by various parties on various dates.  I reluctantly cite thereto.

[5]The parties present their allegations in a form best euphemized as chaotic staccato.  I attempt not to follow suit.

Facts ¶ 2.)  On the day before the Center opened, thus sometime in late October or early November, Plaintiff Landrey saw Defendant Rodgerson pull up four pornographic pictures of obese women while checking filters on the computer network.  (*Id.*, Undisputed Statement of Facts ¶ 30, Ex. A–1 at 36 [1/13/04 Landrey Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 30.)  Later on the same date, Defendant Rodgerson commented to Plaintiff Landrey that "it would make [him] 'sick' to see [her] naked."  (*Id.*, Undisputed Statement of Facts ¶ 32, Ex. A–1 at 41 [1/13/04 Landrey Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 32.)

Plaintiff Landrey claims that generally, after December 2001, Defendant Rodgerson began "screaming" at her and used a different tone of voice with her.  (*Id.*, Undisputed Statement of Facts ¶ 34, Ex. A–1 at 29 [1/13/04 Landrey Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 34.)  Beginning in December 2001 or January 2002, every time Plaintiff Landrey was around Defendant Rodgerson, he would "put [her] down," and "make [her] feel like [she] was totally incompetent."  (*Id.*, Undisputed Statement of Facts ¶ 38, Ex. A–1 at 104 [1/13/04 Landrey Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 38.)

Sometime after December 25, 2001, Defendant Rodgerson mocked Plaintiff Landrey during her participation in a kick-boxing class, knocking on the window and laughing at her. (Defs.' Am. Br., Undisputed Statement of Facts ¶ 29, Ex. A–1 at 34 [1/13/04 Landrey Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 29.)  Defendant Rodgerson told Plaintiff Landrey to kick her leg higher, said she looked ridiculous, and suggested that he would get a camera and take a picture of her.  (*Id.*)

Sometime before February 2002, when Plaintiff Landrey expressed her wish that she was "working out and not at work," Defendant Rodgerson responded that she was "nothing but a housewife with a fat ass." (Defs.' Am. Br., Undisputed Statement of Facts ¶ 31, Ex. A–1 at 39 [1/13/04 Landrey Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 31.)

Without reference to dates, Plaintiff Landrey testified that Defendant Rodgerson used vulgar language when he became angry and told offensive jokes, including one involving prostitutes and genitalia. (*Id.*, Undisputed Statement of Facts ¶¶ 35, 37, Ex. A–1 at 38, 70 [1/13/04 Landrey Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 35, 37, Ex. 3 at 109 [4/6/04 Landrey Dep.].) Plaintiff Landrey also testified that Defendant Rodgerson allowed pens bearing the drug tradename Viagra to be used at the Center, and carried such pens in his shirt pocket. (*Id.*, Undisputed Statement of Facts ¶ 39, Ex. A–1 at 144 [1/13/04 Landrey Dep.]; *admitted in relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 39.)

Defendant Hoffmeister has worked for Defendant City as director of human resources since 1997. (*Id.*, Undisputed Statement of Facts ¶ 10; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 10.) After learning of employees' complaints regarding Defendant Rodgerson, Defendant Hoffmeister called a meeting with various Center staff members to take place on or about February 7, 2002. (*Id.*, Undisputed Statement of Facts ¶ 1; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 1.) Plaintiff Landrey asserts that she could not be present for the meeting, but on or about February 7, 2002, she met with Defendant

Hoffmeister and city manager Mike Copp and complained about Defendant Rodgerson's actions. (Defs.' Am. Br., Ex. A–2 at Attach. 1–2, 64 [Hoffmeister Aff.].)

On April 23, 2002 Plaintiff Landrey sent a letter to Copp complaining of sexual harassment by Defendant Rodgerson and threatening to bring suit. (*Id.*, Ex. A–2 at Attach. 1–2 [Hoffmeister Aff.].) On April 25, 2002, Copp sent a response letter to Plaintiff Landrey indicating that Defendants had sent Defendant Rodgerson to counseling. (Pls.' Resp., Ex. 16 [4/25/2002 Letter].) Despite Plaintiff Landrey's statement in her April 23, 2002 letter that transferring her to another department would not be a "solution," Plaintiff Landrey requested to be transferred from the Center to City Hall. (Defs.' Am. Br., Undisputed Statement of Facts ¶ 62, Ex. A–2 at Attach. 1–2 [Hoffmeister Aff.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 62.) On or about April 29, 2002, Plaintiff Landrey began working for Defendant City at City Hall. (*Id.*, Ex. A–2 at Attach. 1–2 [Hoffmeister Aff.].) The parties do not dispute that Plaintiff Landrey did not receive a demotion, because her rate of pay and her job "step" remained the same following her transfer.[6] (*Id.*, Undisputed Statement of Facts ¶ 63; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 63.)

On or about October 11, 2002, Plaintiff Landrey's employment with Defendant City came to a close. (*Id.*, Ex. A–2 at Attach. 40–41 [Hoffmeister Aff.].) Plaintiff Landrey asserts that on October 11, 2002, Defendant Hoffmeister announced her intentions to relocate Plaintiff Landrey's

---

[6]Surprisingly, Plaintiff Landrey asserts that although the "grade" remained the same, the "job code/class" of her position at City Hall indicates that the transfer "was a demotion." (Pls.' Resp., Statement of Additional Disputed Facts ¶ 57.) In support of her contention, Plaintiff Landrey purports to offer a salary chart showing disparity between the positions, which is questionably probative in light of her admission referenced above and her testimony that the new position was not a demotion because she received an "upgrade" and her salary remained the same. (*Id.*, Ex. 14 [Salary Ranges]; *Cf.* Defs.' Am. Br., Ex. A–1 at 103 [1/13/04 Landrey Dep.].)

office to a new floor so Defendant Hoffmeister could better "keep an eye on [Plaintiff Landrey]." (Pls.' Resp., Statement of Additional Disputed Facts ¶ 79.)  This request apparently upset Plaintiff Landrey.  (*Id.*)  Plaintiff Landrey testified that she left work after the conversation, sometime around ten o'clock a.m., intending to return to work the following business day.  (*Id.*, Ex. 2 at 165–66 [1/13/04 Landrey Dep.].)  In a letter Dated October 14, 2002, Defendant Hoffmeister explained that Plaintiff Landrey was discharged effective October 11, 2002 for unsatisfactory performance, insubordination, and unauthorized absence from work — including her absence on October 11, 2002.  (*Id.*, Ex. A–2 at Attach. 40–41 [Hoffmeister Aff.].)

### b.    *Facts Relating to Plaintiff Vasquez*

Plaintiff Vasquez began working for Defendant City in March 2001.  (Compl. ¶ 10; Defs.' Am. Br. at Ex. A–2 at Attach. 62 [Hoffmeister Aff.].)  Plaintiff Vasquez worked at the Center as a recreation coordinator and supervisor.  (*Id.*)  Plaintiff Vasquez's job duties included running the adult volleyball and softball programs and running the ice rink at the Center.  (Compl. ¶ 10; Defs.' Am. Br., Undisputed Statement of Facts ¶ 84; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 84.)  Plaintiff Vasquez testified she felt Defendant Rodgerson held the same expectations for her as he did for male employees, but believed Defendant Rodgerson did not respect her, "micromanaged" her, and reprimanded her often.  (Defs.' Am. Br., Undisputed Statement of Facts ¶¶ 66, 70; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 66, 70.)  Plaintiff Vasquez described Defendant Rodgerson as "unprofessional" and recounted that he swore "all the time."  (*Id.*, Undisputed Statement of Facts ¶¶ 65, 67, Ex. A–1 at 90 [1/16/04 Vasquez Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 65, 67.)

Plaintiff Vasquez's allegations are notably unspecific as to time.  Early on in his tenure, Defendant Rodgerson held a staff meeting, at which he indicated that he had not obtained a recreation degree, and called such degrees "ridiculous."  (*Id.*, Undisputed Statement of Facts ¶ 72, Ex. A–1 at 23 [1/16/04 Vasquez Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 72.)  Plaintiff Vasquez took offense to Defendant Rodgerson's statement because she earned a recreation degree.  (*Id.*, Undisputed Statement of Facts ¶ 75; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 75.)

"Days or a week" later, Defendant Rodgerson discussed with Plaintiff Vasquez the amount she had chosen to pay umpires.  (*Id.*, Undisputed Statement of Facts ¶ 76, Ex. A–1 at 29 [1/16/04 Vasquez Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 76.)  Plaintiff Vasquez understood a comment Defendant Rodgerson made — that he was going to become an umpire because he would earn more money — to imply that Plaintiff Vasquez was mishandling her program budget.  (*Id.*)  "Within a week," or possibly "on the same day," of the aforementioned  conversation, Defendant Rodgerson learned that no officials had shown up for a game and yelled at Plaintiff Vasquez.  (*Id.*, Undisputed Statement of Facts ¶ 77, Ex. A–1 at 29 [1/16/04 Vasquez Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 77.)  Plaintiff Vasquez later learned that the game in question was not one in her program, and the lack of officials was not her responsibility.  (*Id.*)

Sometime between July 2001 and November 2001, Plaintiff Vasquez underwent a colonoscopy.  (*Id.*, Ex. A–1 at 35–37 [1/16/04 Vasquez Dep.].)  After the procedure, Defendant Rodgerson asked Plaintiff Vasquez "how [her] ass was."  (*Id.*, Undisputed Statement of Facts ¶ 78,  Ex. A–1 at 34–35 [1/16/04 Vasquez Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of

Undisputed Material Facts ¶ 78.)  Prior to November 2001, Plaintiff Vasquez did not make any complaints about Defendant Rodgerson to either Defendant Hoffmeister or Copp. (*Id.*, Undisputed Statement of Facts ¶ 89; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 89.)

As mentioned above, on or about February 7, 2002, after learning of complaints about Defendant Rodgerson, Defendant Hoffmeister called staff meeting.  (*Id.*, Undisputed Statement of Facts ¶ 1; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 1.)  On March 14, 2002, Defendant Hoffmeister organized a "facilitation" meeting with a mental health professional, Jody Andrews.  (*Id.*, Undisputed Statement of Facts ¶ 3; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)  Defendants required all full-time Center staff to attend the March 14, 2002 facilitation.  (*Id.*)  Copp and Defendant Hoffmeister also attended the facilitation.  (*Id.*)  In addition, city attorney Teresa Williams interviewed the Center staff.  (Defs.'s Br., Undisputed Statement of Facts ¶ 5; *admitted in relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)

On April 23, 2002, Plaintiff Vasquez sent a letter to Copp: (1) underscoring that she had complained about Defendant Rodgerson's "discriminating attitude towards women" and "unwelcome verbal comments" at the meeting with Defendant Hoffmeister, the meeting with Andrews, and the interview with Williams; and (2) expressing her concern that her complaints were being ignored.  (Defs.' Am. Br., Ex. A–2 at Attach. 4 [Hoffmeister Aff.].)

On November 11, 2002 and January 2, 2003, Plaintiff Vasquez received disciplinary reprimands regarding her job performance.  (*Id.*, Undisputed Statement of Facts ¶ 103, Ex. A–2 ¶ 17 [Hoffmeister Aff.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶

103.)  On November 11, 2002, Plaintiff Vasquez received a negative job performance memorandum and a one-day suspension from work based on her negative attitude and problems with her management of the Center ice rink.  (Defs.' Am. Br., Ex. A–2 at Attach. 17–18, 35 [Hoffmeister Aff.]; Defs.' Reply at 47.)  On January 3, 2003, Plaintiff Vasquez received a negative job performance memorandum and a three-day suspension from work based on problems with her management of the Center ice rink.  (Defs.' Am. Br., Ex. A–2 at Attach. 19–20, 36 [Hoffmeister Aff.]; Defs.' Reply at 47.)  On April 10, 2003, Plaintiff Vasquez tendered a letter indicating her voluntary resignation from employment effective April 24, 2003.  (Defs.' Am. Br., Ex A–2 at Attach. 38 [Hoffmeister Aff.].)

### c.   *Facts Relating to Plaintiff Dady*

Plaintiff Dady began working for Defendant City in 1993.  (*Id.*, Ex. A–2 at Attach. 63 [Hoffmeister Aff.].)  At least during the period of time relevant to this action, Plaintiff Dady worked as an administrative assistant.  (*Id.*)  In or around November 2001, Defendant Rodgerson brought into his office a picture of two scantily-clad women posed in a sexually suggestive position.  (*Id.*, Ex. A–1 at 59–60 [1/8/04 Dady Dep.].)  Plaintiff Dady found the picture offensive. (*Id.*, Undisputed Statement of Facts ¶ 109; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 109.)  Plaintiff Dady testified that from the  November 2001 until Plaintiff Dady left, Defendant Rodgerson frequently communicated with her by "screaming" at her.  (*Id.*, Undisputed Statement of Facts ¶¶ 113, 115, Ex. A–1 at 93, 101[1/8/04 Dady Dep.]; *admitted in relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 113, 115.)

Plaintiff Dady's remaining allegations are not specific as to dates or time periods.  Plaintiff Dady took offense to Defendant Rodgerson's: (1) use of pens displaying the drug tradename Viagra; (2) frequent use of profane language; (3) indication to Plaintiff Dady that the Center did not have adequate storage space for "a bunch of fat ass women's supplies;" (4) divulging details to her about his intimate relationship with his wife; and (5) telling Plaintiff Dady on two occasions that he "need[ed] to get laid."  (*Id.*, Undisputed Statement of Facts ¶¶ 108, 110–12, 117–18, Ex. A–1 at 68–69 [1/8/04 Dady Dep.]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 108, 110–12, 117–18.)

On April 23, 2002, Plaintiff Dady wrote a letter to Copp, in which she expressed complaints of Defendant Rodgerson's sexual harassment, stated concerns about working in a hostile work environment, and requested to be placed on administrative leave or transferred to another department.  (*Id.*, Ex. A–2 at Attach. 3 [Hoffmeister Aff.].)

### d.      *Facts Relating to All Parties*

Defendant Hoffmeister neither hired nor supervised Defendant Rodgerson.  (*Id.*, Undisputed Statement of Facts ¶¶ 11, 14; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 11, 14.)  City manager Copp supervised Defendant Rodgerson. (Defs.' Am. Br., Undisputed Statement of Facts ¶ 141; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 141.)  On May 16, 2002, Copp wrote Defendant Rodgerson a letter explaining that: (1) several employees had complained about Defendant Rodgerson's behavior; (2) Defendant Rodgerson's behavior had come "dangerously close" to sexual harassment; and (3) future complaints against Defendant Rodgerson would be investigated, and he would be "severely and swiftly disciplined" for any sexual harassment.  (Defs.' Am. Br.,

Ex. A–2 at Attach. 5–6 [Hoffmeister Aff.].)  In the letter, Copp also required Defendant

Rodgerson to: (1) continue with personal counseling with an emphasis on sensitivity training and

communication; (2) attend all management training sessions Copp scheduled; and (3) review tapes

on sexual harassment within a two week time period of the date of the letter.  (*Id.*)  Defendant

Rodgerson continued with counseling, but neither attended management training sessions nor

reviewed any tapes. (Pls.' Resp., Statement of Additional Disputed Facts ¶¶ 88, 89; *admitted at*

Defs.' the City of Glenwood Springs and Sebrina Hoffmeister's Reply Br. in Supp. of Mot. for

Summ. J., Resp. Concerning Additional Disputed Facts ¶¶ 88, 89 [filed May 17, 2005]

[hereinafter "Defs.' Reply].)

On June 11, 2002, Plaintiffs filed complaints with the Colorado Civil Rights Division and

Equal Employment Opportunity Commission ("EEOC").  (*Id.*, Ex. A–2 at Attach. 62–64

[Hoffmeister Aff.].)  Each Plaintiff asserted complaints of discriminatory retaliation and sexual

harassment.  (*Id.*)  In addition, Plaintiff Vasquez asserted complaints of disparate treatment

because of her sex and her marriage to a person of Hispanic heritage.  (*Id.*, Ex. A–2 at Attach. 62

[Hoffmeister Aff.].)

## 2.      *Procedural History*

On July 18, 2003, Plaintiffs filed a complaint in this court asserting six claims: (1) sex

discrimination under Title VII; (2) sex discrimination in violation of the Colorado Civil Rights

Act; (3) outrageous conduct against Defendant Rodgerson; (4) negligent infliction of emotional

distress; (5) negligent hiring; and (6) negligent supervision.  (Compl.)  The bounds of Plaintiffs'

first claim for relief are unclear from the complaint.  In their response to Defendants' motion,

Plaintiffs clarify that: (1) all Plaintiffs assert Title VII claims for maintenance of a hostile work

environment; (2) Plaintiffs Landrey and Vasquez assert Title VII claims for retaliation; and (3) Plaintiff Vasquez asserts a Title VII claim for discrimination.  (Pls.' Resp. at 30–54.)  On September 25, 2003, Defendants filed an answer.  (Answer [filed Sept. 25, 2003].)  On February 23, 2004, Defendant Rodgerson filed an answer.  (Answer [filed Feb. 23, 2004].)

On May 3, 2004, Defendants filed their initial motion for summary judgment.  (Mot. for Summ. J., Defs.' the City of Glenwood Springs and Sebrina Hoffmeister's Mem. Br. in Supp. of Mot. for Summ. J. [filed May 3, 2004].)  On May 12, 2004, Defendants filed an unopposed motion for leave to file a corrected brief in support of its motion.  (Unopposed Mot. to File Defs.' the City of Glenwood Springs and Sebrina Hoffmeister's Mem. Br. in Supp. of Mot. for Summ. J. [filed May 3, 2004].)  On May 13, 2004, I granted the motion and Defendants filed an amended brief in support of their motion for summary judgment.  (Order [filed May 13, 2004]; Defs.' the City of Glenwood Springs and Sebrina Hoffmeister's Am. Mem. Br. in Supp. of Mot. for Summ. J. [filed May 3, 2004].)  On June 7, 2004, Plaintiffs filed a response to Defendants' motion. (Mem. Br. in Opp'n to Defs.' the City of Glenwood Springs and Sebrina Hoffmeister's Mot. for Summ. J. [filed June 7, 2004].)  On July 1, 2004, Defendants filed a reply brief in support of their motion for summary judgment.  (Defs.' the City of Glenwood Springs and Sebrina Hoffmeister's Reply Br. in Supp. of Mot. for Summ. J. [filed July 1, 2004].)

On March 18, 2005, I issued an order striking Defendants' motion and submissions filed therewith due Defendants' myriad and egregious violations of my procedural rules.  (Order and Mem. of Decision [filed Mar. 18, 2005].)  In my order, I stated that this court was "unable to reach any reasoned conclusions on the briefs in their present form."  (*Id.*)  On March 28, 2005, Defendants filed a motion to resubmit their motion for summary judgment.  (City of Glenwood

Springs and Sebrina Hoffmeister's Mot. to Resubmit their Mot. for Summ. J. and Mem. Br. in

Supp. [filed Mar. 28, 2005].)  On March 29, 2005, I granted Defendants' motion.  (Order

Granting the City of Glenwood Springs and Sebrina Hoffmeister's Mot. to Resubmit their Mot.

for Summ. J. and Mem. Br. in Supp.  [filed Mar 29, 2005].)

On April 1, 2005, Defendants resubmitted their motion for summary judgment.  (Defs.'

Am. Br.)  Defendants argue that Plaintiffs cannot maintain their Title VII claims because: (1)

Plaintiffs cannot establish harassment sufficient to have created a hostile work environment; (2)

Plaintiffs Landrey and Vasquez cannot establish a *prima facie* case for retaliation; and (3) Plaintiff

Vasquez cannot establish a *prima facie* case for disparate treatment.  (Defs.' Am. Br. at 22–40;

Defs.' Reply at 46–47.)  Defendants argue further that Plaintiffs' state law claims must fail

because: (1) claims under the Colorado Anti-Discrimination Act are analyzed under Title VII

framework; and (2) Plaintiffs' claims for negligent hiring, supervision, and infliction of emotional

distress are barred under the Colorado Governmental Immunity Act, Colo. Rev. Stat. §

24–10–101 *et seq.* (Defs.' Am. Br. at 40–43.)  On April 25, 2005, Plaintiffs filed a response to

Defendants' motion.  (Pls.' Resp.)  On May 17, 2005, Defendants filed a reply brief in support of

their motion.  (Defs.' Reply.)

## ANALYSIS

### 1.    *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006).  A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.**   ***Evaluation of Claims***

As a preliminary matter, I note Plaintiffs have named individual Defendants Hoffmeister and Rodgerson in this case.  The law is clear that under Title VII "suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate."  *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993).  Further,

> [t]he relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act. . . .  [T]he

> proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.

*Id.* (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 [11th Cir. 1991]).  Plaintiffs' claims must proceed against Defendants Hoffmeister and Rodgerson in their official capacity, and thus operate as a claims against Defendant City itself.  *See Id.*  Consequently, although Defendant Rodgerson did not join in Defendants' motion for summary judgment, as a matter of course, Defendant Rodgerson's liability will be dealt with in analyzing Defendant City's liability.

### a.    Title VII Hostile Work Environment – All Plainitffs

Defendants argue they are entitled to summary judgment on Plaintiffs' hostile work environment claims.  (Defs.' Am. Br. at 22–33.)  Plaintiffs allege that Defendants discriminated against them and violated Title VII by maintaining a hostile work environment.  (Compl. ¶¶ 21–23.)  Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1) (2006).  This statutory provision prohibits subjecting an employee to sexual harassment creating a hostile work environment.[7]  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986).  The Tenth Circuit has held:

> Title VII's prohibition of employment discrimination based on sex encompasses hostile work environment sexual harassment.  This harassment occurs where [sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working

---

[7]Title VII also prohibits discrimination by *quid pro quo* sexual harassment, which Plaintiffs have not alleged.  *Meritor*, 477 U.S. at 65–66; *see Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987) ("Courts have consistently recognized two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment, and hostile work environment sexual harassment.").

> environment. To form the basis of a claim, the sexual harassment
> must be sufficiently severe or pervasive to alter the conditions of
> [the victim's] employment and create an abusive working
> environment. Based on the totality of the circumstances, the
> environment must be perceived both subjectively and objectively as
> abusive.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (citations omitted) (internal

quotation marks omitted) (alterations in original). Moreover, the Tenth Circuit has held that

"[s]exual harassment is behavior 'that would not occur but for the sex of the employee' . . . . 'If

the nature of an employee's environment, however unpleasant, is not due to her gender, she has

not been the victim of sex discrimination.'" *Winsor v. Hinckley Dodge*, 79 F.3d 996, 1000 (10th

Cir. 1996) (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1537 [10th Cir. 1995])

(citations and internal quotation marks omitted). Defendants argue that Plaintiffs cannot

demonstrate sexual harassment so severe or pervasive as to alter the conditions of their

employment. (Defs.' Am. Br. at 28.)

To establish that a hostile work environment existed, each Plaintiff must prove the

following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome

harassment; (3) the harassment was based on sex; and (4) due to its severity or pervasiveness, the

harassment altered a term, condition, or privilege of Plaintiff's employment and created an abusive

working environment. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797, 798 (10th

Cir.1997). With these general principles in mind, I address each Plaintiff's hostile work

environment claim in turn.

### i.    Plaintiff Landrey

Like all Plaintiffs in this case, Plaintiff Landrey is a woman, thus satisfying the first

element. As to the second element, Plaintiff Landrey asserts that she was subjected to unwelcome

harassment when Defendant Rodgerson: (1) threw a bag of candy at her; (2) mocked Plaintiff Landrey during her participation in a kick-boxing class, telling her she should kick higher and looked "ridiculous;" (3) balked at storing "all these fat-assed women's food" and hosting "all the fat women in town" upon learning that Weight Watchers meetings would be held at the Center; (4) commented "there is nothing uglier than a fat woman breastfeeding her baby in public;" (5) showed Plaintiff Landrey four pornographic pictures of obese women while checking filters on the computer network and told her "it would make [him] 'sick' to see [her] naked;" (6) called Plaintiff Landrey "nothing but a housewife with a fat ass;" (7) insulted Plaintiff Landrey and her manner of dress, stating there is "nothing uglier than a fat woman in stretch pants;" (8) asked Plaintiff Landrey about the circumstances of her divorce, "what happened, wasn't the sex good enough?" and (9) relayed information regarding his intimate relationship with his wife.[8]  (Pls.' Br. at 32–38.)

Next, I evaluate Plaintiff Landrey's allegations in turn to analyze whether Defendant Rodgerson's actions were based on sex.  The relevant inquiry in determining whether harassment is based on sex is "whether members of one sex are subjected to a disadvantage to which the other sex is not."  *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005).  Plaintiff Landrey's first four allegations are not based on sex.  First, Plaintiff Landrey herself admits throwing candy at her was not based on her sex.  (Pls.' Br. at 36.)  Similarly, Defendant Rodgerson's comments that Plaintiff should kick higher and looked "ridiculous" in kickboxing

---

[8]Although Plaintiff Landrey asserts that she was subjected to "at least [twenty] specific instances of abuse" and "countless other comments, the specifics of which cannot be remembered," I list every instance Plaintiff Landrey presents in her argument.  (Pls.' Br. at 33–38.)

class lack sexual content and motivation.  Plaintiff does not allege or otherwise evince that Defendant Rodgerson would not have acted as he did but for her sex.  *See Winsor*, 79 F.3d at 1000 ("Sexual harassment is behavior that would not occur but for the sex of the employee.").

Plaintiff Landrey contends that: (1) upon learning that Weight Watchers meetings would be held at the Center, Defendant Rodgerson balked at storing "all these fat-assed women's food" and hosting "all the fat women in town;" and (2) Defendant Rodgerson commented "there is nothing uglier than a fat woman breastfeeding her baby in public."  (Pls.' Br. at 35, Ex. 3 at 72, 76 [4/6/04 Landrey Dep.])  Again, Plaintiff Landrey does not evince that such statements were sexually motivated or would not have been made but for Plaintiff Landrey's sex.  "Title VII is not a general civility code for the American workplace."  *Dick*, 397 F.3d at 1263 (citation and internal quotation marks omitted).  Although these incidents are fine examples of boorish behavior, they do not rise to the level of sexual harassment.  Because this matter can be fully resolved at the fourth element, I will assume, *arguendo*, that Plaintiff Landrey's remaining six allegations of sexual harassment were indeed based on sex.

The fourth element requires a court to analyze whether the alleged sexual harassment was subjectively and objectively severe or pervasive enough to create an abusive or hostile working environment.  *Seymore*, 111 F.3d at 797–98.  In performing this analysis, courts look to the totality of the circumstances,  "concentrat[ing] not on individual incidents, but on the overall scenario."  *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1263 (10th Cir. 1998).  Making factual inferences in Plaintiff Landrey's favor, as I must, I concede that Plaintiff Landrey subjectively believed these incidents created a hostile environment.  It thus falls upon this court to determine whether Plaintiff Landrey has raised a genuine issue of fact as to whether a reasonable

observer would find the environment hostile.  *See Harris v. Forklift Sys.*, 510 U.S. 17, 22-23 (U.S. 1993).  In determining whether a work environment is objectively hostile, a court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*  While every factor may be taken into account, no single factor is required.  *Id.*

Upon review, Plaintiff Landrey's remaining allegations can be reduced to four incidents, which all took place before she complained about Defendant Rodgerson's behavior in February 2002.  (Pls.' Br. at 32–38.)  Plaintiff Landrey testified that in or around July or August 2001, Defendant Rodgerson told her about his intimate relationship with his wife on the same day he asked Plaintiff Landrey about the role of sex in her divorce.  (Pls.' Resp., Ex. 3 at 68 [4/6/04 Landrey Dep.], Ex. 4 at 427–28 [4/21/04 Landrey Dep.].)  Plaintiff Landrey testified that in or about November 2001, Defendant Rodgerson showed her pornographic pictures on a computer and shortly thereafter said "it would make [him] 'sick' to see [Plaintiff Landrey] naked."  (Pls.' Resp., Ex. 3 at 41 [4/6/04 Landrey Dep.].)  Also in or about November 2001, Defendant Rodgerson told Plaintiff Landrey there is "nothing uglier than a fat woman in stretch pants." (Pls.' Resp., Ex. 3 at 45 [4/6/04 Landrey Dep.].)  Finally, sometime before Plaintiff Landrey's February 7, 2002 meeting, Defendant Rodgerson called her "a housewife with a fat ass." (Defs.' Am. Br., Ex A–1 at 39 [1/13/04 Landrey Dep.].)  Considering the totality of the circumstances, Plaintiff Landrey's remaining allegations demonstrate infrequent, non-threatening offensive utterances that did not interfere with Plaintiff Landrey's work performance.

Moreover, even if Plaintiff Landrey could raise an issue of fact as to whether an objectively hostile work environment existed, her claim would still fail. An employer may only be held liable for the existence of a hostile sexual work environment in three situations: (1) the plaintiff establishes that the employer was negligent in failing to remedy or prevent the hostile environment; (2) the harassing employee acted within the scope of his employment; or (3) the harassing employee was an agent acting on behalf of the employer or was aided in accomplishing the tort by the existence of an agency relationship. *See Seymore*, 111 F.3d at 797; *Adler*, 144 F.3d at 673.

Here, Plaintiff Landrey bases her claims on Defendant City's negligence. (Pls.' Br. at 52.) Under the negligence theory of employer liability, a plaintiff "'must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment.'" *Adler*, 144 F.3d at 673 (quoting *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1444 [10th Cir.].) Because an employer is only potentially liable for negligence in remedying and preventing harassment that it knew or should have known about, courts make a two-fold inquiry into: (1) the employer's actual or constructive knowledge of the harassment; and (2) the adequacy of the employer's remedial and preventative responses to any actually or constructively known harassment. *Adler*, 144 F.3d at 673. By Plaintiff Landrey's own testimony, all of the alleged incidences of sexual harassment took place before her February 7, 2002 meeting with Copp and Defendant Hoffmeister. (Pls.' Resp., Ex. 3 at 41, 45, 68 [4/6/04 Landrey Dep.], Ex. 4 at 427–28 [4/21/04 Landrey Dep.]; Defs.' Am. Br., Ex A–1 at 39 [1/13/04 Landrey Dep.].) Plaintiff Landrey also testified that February 7, 2002 was the first time she complained to Copp and Defendant Hoffmeister about Defendant Rodgerson's behavior. (Defs.'

Am. Br., Ex. A–1 at 32–33, 103–04 [1/13/04 Landrey Dep.].)  Plaintiff Landrey's claim is based

upon actions that took place before Defendants were on notice.  Consequently, even if Plaintiff

Landrey could establish a question of fact as to the existence of a hostile work environment, she

cannot raise a question of fact as to Defendants' negligence in failing to remedy that environment.

Therefore, Defendants are entitled to summary judgment on Plaintiff Landrey's hostile work

environment claim.

### ii.      *Plaintiff Dady*

Plaintiff Dady's claim rests upon Defendant Rodgerson's: (1) vulgar, racist, and sexist

jokes and remarks; (2) yelling at Plaintiff Dady; (3) offer and use of pens bearing the drug

tradename Viagra; (4) ownership and possession of a photograph of scantily-clad women in a

compromising position; (5) efforts to discuss his sex life; and (6) statements on two occasions that

he "need[ed] to get laid," one of which Plaintiff Dady understood to be a sexual proposition

directed toward her.  (Pls.' Resp. at 45–46.)  Plaintiff Dady provides no citation to the record in

support of her first two contentions.  Such conclusory allegations are insufficient to prove an issue

of fact for summary judgment.  *Annett*, 371 F.3d at 1237.  Even if Plaintiff Dady had established

her contentions, she provides no admissible evidence that Defendant Rodgerson's crude jokes,

vulgar language, and yelling were based on her sex or interfered with her work performance.  *See*

*Seymore*, 111 F.3d at 797, 798.

Accordingly, I turn to Plaintiff Dady's substantiated allegations.  As to Defendant

Rodgerson's offer and use of pens reading "Viagra" and possession of a lascivious photograph in

the workplace, Plaintiff Dady does not argue — and the evidence does not suggest — that these

actions would not have occurred but for Plaintiff Dady's sex. Consequently, these actions do not constitute sexual harassment. *See Winsor*, 79 F.3d at 1000.

Plaintiff Dady asserts that Defendant Rodgerson stated he "need[ed] to get laid" on two occasions, one of which Plaintiff Dady understood to be a sexual overture directed at her. (Defs.' Am. Br., Ex. A–1 at 214–217 [1/8/04 Dady Dep.]; Pls.' Resp., Ex. 6 at 174 [4/7/04 Dady Dep.].) Plaintiff Dady testified that Defendant Rodgerson made the first comment before the February 7, 2002 meeting and made the second comment sometime in February 2002 or March 2002 after the February 7, 2002 meeting. (Pls.' Resp., Ex. 6 at 176, 181 [4/7/04 Dady Dep.].) Notably, Plaintiff Dady testified that she did not report Defendant Rodgerson's comment to her at the February 7, 2002 meeting. (*Id.*, Ex. 6 at 179 [4/7/04 Dady Dep.].) As stated above, Plaintiff Dady cannot raise an issue of fact with respect to Defendant City's negligence because she does not allege or evince that Defendants were on notice of Defendant Rodgerson's behavior. *See Adler*, 144 F.3d at 673. With respect to Defendant Rodgerson's comment in February or March 2002, Plaintiff Dady does not allege or otherwise evidence that she reported Defendant Rodgerson's second comment to Defendants. (Pls.' Br., *passim*.) Notice notwithstanding, when taken in context, I find that Defendant Rodgerson's second comment amounts to a stray offensive utterance. Such stray comments are not sufficient to create an issue of fact as to the pervasive nature of Defendant Rodgerson's alleged harassment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Plaintiff Dady contends that Defendant Rodgerson talked about his intimate relationship with his wife on two occasions. (Defs.' Am. Br., Ex. A–1 at 222–24 [1/8/04 Dady Dep.].) Plaintiff Dady does little to prove her claim. Plaintiff Dady relies on deposition testimony attached to Defendants' motion in support of her claim and makes no reference to dates or to the

substance of Defendant Rodgerson's alleged comments. Even assuming, *arguendo*, that Plaintiff Dady can establish Defendant Rodgerson would not have made these comments but for her sex, her claim still must fail. "[W]orkplace harassment is not 'automatically discrimination because of sex merely because the words used have sexual content or connotation.'" *Dick*, 397 F.3d at 1263 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 [1998].) On the whole, Plaintiff Dady does not allege or evince that Defendant Rodgerson's harassment was frequent, severe, threatening, humiliating, or unreasonably interfered with her work performance. (Pls.' Resp., *passim*.) Stray comments and isolated incidents are insufficient to create a hostile work environment under Title VII. *See Faragher*, 524 U.S. at 788; *Vigil v. City of Las Cruces*, 119 F.3d 871, 872 n.1 (10th Cir. 1997). Ultimately, Plaintiff Dady's claim rests entirely upon these two — or, including the February or March 2002 comment regarding "need[ing] to get laid," three — isolated instances of offensive utterances, which cannot raise an issue of fact as to whether the harassment was objectively severe or pervasive enough to create a hostile work environment. *Harris*, 510 U.S. at 21–22; *Seymore*, 111 F.3d at 797–98. Accordingly, Plaintiff Dady has not raised a genuine issue of fact as to the existence of a hostile working environment, and Defendants are entitled to summary judgment on her claim.

### iii.    Plaintiff Vasquez

In support of her claim, Plaintiff Vasquez rather vaguely asserts "the hostile work environment was based on the constant sexual references, the vulgar language, vulgar jokes, etc [sic]. This, of course, involves treatment that is distinct from treatment of men." (Pls.' Resp. at 46–47.) Plaintiff Vasquez subsequently clarifies that Defendant Rodgerson: (1) demeaned her recreation degree; (2) subjected her to "crude and improper comments;" (3) "micromanaged" her;

and (4) refused to accept her ideas when she presented them, but accepted the same ideas when presented by males.  (*Id.* at 48.)  Plaintiff Vasquez provides no citation to the record in support of her first three contentions.  (*Id.* at 46–48.)  Conclusory allegations, without more, are insufficient to create a genuine issue of fact for summary judgment.  *Annett*, 371 F.3d at 1237.  Evidentiary support notwithstanding, Plaintiff Vasquez's first three allegations do not rise to the level of sexual harassment.  "Title VII is not a general civility code for the American workplace."  *Dick*, 397 F.3d at 1263.  Plaintiff Vasquez has not alleged or otherwise demonstrated that Defendant Rodgerson's insulting an area of study, crude language, and overbearing management style forced a disadvantage upon her because of her sex.  *Id.*

As to Plaintiff Vasquez's contention that Defendant Rodgerson would accept ideas presented from males, but not females, Plaintiff Vasquez testified that upon her presentation of ideas regarding ice skate storage and the design of the ice rink building to Defendant Rodgerson, he rejected them.  (Pls.' Resp., Ex. 8 at 67–70 [Vasquez Dep.].)  Plaintiff Vasquez testified that she then expressed the same ideas to a male co-worker, who in turn presented them to Defendant Rodgerson.  (*Id.*)  Plaintiff Vasquez testified that Defendant Rodgerson accepted and implemented the two ideas upon that male co-worker's presentation.  (Pls.' Resp., Statement of Additional Disputed Facts ¶ 33, Ex. 8 at 67–70 [Vasquez Dep.].)  Even assuming Plaintiff Vasquez could establish that the two incidents were motivated by her sex, they are not examples of objective sexual harassment sufficient to support her claim.

Specifically, Plaintiff Vasquez does not provide evidence to show that the two incidents were severe, physically threatening, humiliating or unreasonably interfered with her job performance.  *See Harris*, 510 U.S. at 22–23.  Plaintiff Vasquez cannot use two offensive events

over the course of two years to raise a genuine issue of fact as to the severe or pervasive nature of sexual harassment. *See Sprague v. Thorn Ams.*, 129 F.3d 1355, 1365–66 (five incidents of harassment taking place over sixteen months insufficient to establish hostile work environment). Plaintiff Vasquez has not met her burden to establish an objectively hostile work environment, thus Defendants are entitled to summary judgment on Plaintiff Vasquez's claim.

### b.      *Plaintiff Landrey's Title VII Retaliation Claim*

Defendants argue that they are entitled to summary judgment on Plaintiffs Landrey's claim for retaliation under title VII. (Defs.' Am. Br. at 33–40.) "Title VII prohibits an employer from discriminating against an employee in retaliation for opposing unlawful employment practices." *Penry*, 155 F.3d at 1263 (citing 42 U.S.C. § 2000e-3[a]). Plaintiff Landrey asserts that by terminating her employment, Defendants retaliated against her for her protected opposition to sexual harassment.[9] (Pls.' Resp. at 38–45.) Defendants argue that they are entitled to summary judgment because Plaintiff Landrey cannot establish a causal connection between her protected opposition and termination. (Defs.' Am. Br. at 36–37.)

In analyzing claims for Title VII retaliation, courts apply the framework of shifting evidentiary burdens outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). As a threshold matter under *McDonnell Douglas*, Plaintiff Landrey must establish a *prima facie* case of retaliation. *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001). The "burden of establishing a *prima facie* case" is "not onerous." *Id.* (citation and internal quotation

---

[9]Despite her contentions in the June 11, 2002 EEOC complaint, Plaintiff Landrey makes no argument for retaliatory demotion in connection with her transfer to City Hall on or about April 29, 2002. (Pls.' Br., *passim*.)

marks omitted).  "Establishment of a *prima facie* case creates a presumption of unlawful

discrimination."  *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981).  If Plaintiff

Landrey stablishes a *prima facie* case, the burden of production then shifts to Defendants to

"articulate a legitimate, nondiscriminatory reason for the adverse employment action."  *Wells*, 325

F.3d at 1212 (citing *McDonnell Douglas*, 411 U.S. at 792).  If Defendants articulate a proper

basis for their actions, the burden shifts back to Plaintiff Landrey to demonstrate that the reason

advanced by Defendants is a pretext for discrimination.  *Burdine*, 450 U.S. at 255–56.

### i.    *Prima Facie Case*

To establish a *prima facie* case of retaliation, Plaintiff Landrey must demonstrate that: (1)

she participated in protected opposition to Title VII discrimination; (2) Defendants' adverse

employment action against Plaintiff Landrey was subsequent to or contemporaneous with her

protected opposition; and (3) a causal connection exists between her protected opposition and

Defendants' adverse action.  *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996);

*Penry*, 155 F.3d at 1263–64 (quoting *Cole*, 43 F.3d at 1381).

Plaintiff Landrey alleges that she participated in protected opposition under Title VII when

she made "complaints regarding [Defendant] Rodgerson."  (Pls.'s Resp. at 39.)  Informal

complaints to supervisors can constitute protected opposition under Title VII.  *O'Neal v.

Ferguson Const. Co.*, 237 F.3d 1248, 1253, 1255 (10th Cir. 2001).  Plaintiff Landrey testified

that on or about February 7, 2002, she complained about Defendant Rodgerson's behavior during

a meeting with Defendant Hoffmeister and Copp.  (Defs.' Am. Br., Ex. A–1 at 418 [4/21/04

Landrey Depo.].)  Additionally, in her April 23, 2002 letter to Copp, Plaintiff Landrey also

complained about Defendant Rodgerson's sexual harassment. (*Id.*, Ex. A–2 at Attach.1–2 [Hoffmeister Aff.].)

Further, on June 11, 2002, Plaintiff filed an EEOC charge alleging sex discrimination. (Defs.' Am. Br., Ex. A–2 at Attach. 64 [Hoffmeister Aff.].)  Maintenance of a Title VII retaliation claim is not contingent upon the validity of an underlying Title VII discrimination claim.  *See Robbins v. Jefferson County Sch. Dist.*, 186 F.3d 1253, 1258 (10th Cir. 1999) (holding a plaintiff does not have to prove the validity of the grievance she was allegedly punished for lodging and "opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated").  Plaintiff Landrey's EEOC claim is thus protected opposition under Title VII.

Plaintiff Landrey notes that on September 5, 2002, Defendant City's attorney filed a response to her EEOC claim, and asserts this filing qualifies as protected opposition.  (Pls.' Br. at 40.)  Plaintiff Landrey's contention is absurd.  Plaintiff Landrey may not demonstrate her own acts constituting protected opposition through the acts of others.  Accordingly, Plaintiff Landrey's oppositions made in her February 7, 2002 meeting with Defendant Hoffmeister, her April 23, 2002 letter to Copp, and her June 11, 2002 EEOC complaint are appropriate subjects of her retaliation claim.

To establish the second prong of her *prima facie* case, Plaintiff Landrey must demonstrate that Defendants' adverse employment action against her was contemporaneous with or subsequent to her protected oppositions made between February 7, 2002 and June 11, 2002. *Berry*, 74 F.3d at 985.  It is well-established that termination is an adverse employment action. *Annett v. University of Kansas*, 371 F.3d 1233, 1237 (10th Cir. 2004).  Defendant City terminated Plaintiff Landrey's employment on or about October 11, 2002.  (Defs.' Am. Br., Ex.

A–2 at Attach. 40–41 [Hoffmeister Aff.].)  Thus, Plaintiff Landrey has satisfied the second prong and I progress to the third prong, causation.

Plaintiff Landrey may demonstrate a causal connection "by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982); *see Hysten v. Burlington N. and Santa Fe Ry. Co.*, 296 F.3d 1177, 1184 (10th Cir. 2002); *O'Neal*, 237 F.3d at 1255.  Unless the adverse action is "very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (citation omitted).  More specifically, the Tenth Circuit has found that a "six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient." *Id.*

Here, four months separate Plaintiff Landrey's June 11, 2002 EEOC complaint and October 11, 2002 termination.  Obviously, the temporal connection is even more remote between Plaintiff Landrey's October 11, 2002 termination and the complaints she made in her April 23, 2002 letter to Copp or her February 7, 2002 meeting with Defendant Hoffmeister.  Plaintiff Landrey has not attempted to show causation beyond temporal proximity, and sufficient temporal proximity does not exist.  Therefore, Plaintiff Landrey has not raised a genuine issue of fact as to the existence of a causal connection between her participation in protected opposition and her dismissal and has failed to establish a *prima facie* case.  As such, I need not progress to subsequent *McDonnell Douglas* stages.  Defendants are entitled to summary judgment on Plaintiff Landrey's claim for Title VII retaliation.

### c. *Plaintiff Vasquez's Title VII Discrimination and Retaliation Claims*

Defendants assert that they are entitled to summary judgment on Plaintiff Vasquez's claims for Title VII discrimination and retaliation.  (Defs.' Am. Br. at 33–40.)  Plaintiff Vasquez asserts that Defendants discriminated and retaliated against her when they disciplined her and suspended her employment on November 11, 2002 and January 2, 2003.  (Pls.' Resp. at 49.) Defendants argue that they are entitled to summary judgment because Plaintiff Vasquez cannot establish a *prima facie* case for either of her claims.  (Defs.' Am. Br. at 33–36, 37–40; Defs.' Reply at 46–48.)

### i. *Discrimination*

Plaintiff Vasquez argues that her two suspensions were the result of disparate treatment under Title VII.  (Pls.' Resp. at 49.)  The *McDonnell Douglas* burden-shifting framework described above applies to Plaintiff Vasquez's disparate treatment claim.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  Defendants argue that Plaintiff Vasquez cannot establish the requisite *prima facie* case to maintain her claim because she cannot evince disparate treatment.  (Defs.' Am. Br. at 33–36; 37–40.)

To establish a *prima facie* case of disparate discipline, Plaintiff Vasquez must demonstrate that: (1) she is a member of a protected class; (2) Defendants disciplined her; and (3) Defendants imposed the discipline under circumstances giving rise to an inference of discrimination.  *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000).  Because this inquiry may be fully satisfied at the third stage, I will assume, *arguendo*, that Plaintiff satisfies the first two prongs in that she is female and received two disciplinary suspensions.

Plaintiff Vasquez may meet the third prong by demonstrating that Defendants "treated similarly situated employees differently." *Id.* "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citation and internal quotation marks omitted).  In support of her claim, Plaintiff Vasquez argues that she testified the conduct Defendants complained of in suspending her was either incorrect or identical to that of men working for Defendant Rodgerson.  (Pls.' Resp. at 49.)  Plaintiff Vasquez provides the court no evidence that she so testified.  Rather, Plaintiff Vasquez cites to a certain numbered paragraph section of Plaintiffs' brief recounting an incident involving Defendant Rodgerson allegedly throwing candy at Plaintiff Landrey.  (*Id.*, Statement of Additional Facts ¶ 19.)  A like-numbered paragraph elsewhere in Plaintiffs' brief reflects Plaintiff Vasquez's assertion, supported only by Plaintiff Vasquez's testimony, that she was "singled out for discipline."[10]  (Pls.' Resp., Resp. to Statement of Undisputed Facts ¶ 19.)

Stated simply, Plaintiff Vasquez's argument must fail.  Plaintiff Vasquez offers no evidence to establish she was similarly situated to the employees who allegedly received better treatment beyond her bare-bones allegations that "her conduct was no different" than that of unnamed, unidentified "other males in the department."  (Pls.' Resp., Resp. to Statement of Undisputed Facts ¶ 19.)  Plaintiff Vasquez's conclusory allegations are insufficient to raise an issue of fact for summary judgment.  *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir.

---

[10]The same paragraph, purportedly offered to support Plaintiff Vasquez's discrimination claim, reflects Plaintiff Vasquez's assertion that the "four days of suspension were a [sic] retaliatory."  (Pls.' Resp., Resp. to Statement of Undisputed Facts ¶ 19.)  I remind Plaintiffs that this court is not tasked with linking Plaintiffs' evidence to their allegations and admonish Plaintiffs to proofread their submissions more carefully.

2004).  Without a frame of reference in which to consider the information Plaintiff Vasquez

presents, it is markedly difficult to ascertain how a fact-finder could infer discriminatory motive

on Defendants' part.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)

(holding that in discrimination cases, comparators "must be nearly identical" to the plaintiff "to

prevent courts from second-guessing a reasonable decision by the employer").

Possibly to satisfy the third prong of disparate treatment analysis, Plaintiff Vasquez makes

the rather mysterious argument that Defendant Rodgerson discriminated against women, unless he

found the women attractive.  (Pls.' Br. at 49.)  Citing neither legal authority nor evidence of

record, Plaintiff Vasquez describes the common physical traits of three "attractive, fit[, and]

blonde[]" women and asserts "it is clear that if you are a man or if you are a women who fits this

mold, [Defendant] Rodgerson treated you differently than other women [sic]."  (*Id.*)

Plaintiff Vasquez's argument is beyond unavailing.  Plaintiff Vasquez does not directly

allege that the above-described women received better treatment than she, much less that she and

the three women were similarly situated.  Moreover, Plaintiff's conclusory allegations are

insufficient to raise an issue of fact to defeat summary judgment.  *Annett*, 371 F.3d at 1237.

Accordingly, Defendants are entitled to summary judgment on Plaintiff Vasquez's claim for

disparate treatment.

###### ii.     *Retaliation*

Plaintiff Vasquez asserts that Defendants retaliated against her for protected opposition under Title VII by disciplining her and suspending her employment on November11, 2002 and January 3, 2003.  (Pls.' Resp. at 49–50.)  The *McDonnell Douglas* framework described above applies to Plaintiff Vasquez's claims.  *Berry*, 74 F.3d at 985.  Defendants argue that they are entitled to summary judgment because Plaintiff Vasquez cannot satisfy the causation requirement to establish a *prima facie* case for retaliation.  (Defs.' Am. Br. at 33–36, 37–40.)

As stated above, to establish a *prima facie* case of retaliation, Plaintiff Vasquez must demonstrate that: (1) she participated in protected opposition to Title VII discrimination; (2) Defendants' adverse employment action against Plaintiff Vasquez was subsequent to or contemporaneous with her protected opposition; and (3) a causal connection exists between her protected opposition and Defendants' adverse action.  *Berry*, 74 F.3d at 985.

Plaintiff Vasquez's basis for her retaliation claim is difficult to ascertain from her submissions.  Plaintiff Vasquez does make a passing reference to having expressed "in her complaints to [Defendant] [C]ity" that Defendant Rodgerson's behavior was "sexual harassment."  (Pls.' Br. at 48.)  In a letter dated April 23, 2002, Plaintiff Vasquez emphasized that she had complained about Defendant Rodgerson's "discriminating attitude towards women" and "unwelcome verbal comments" at a meeting with Defendant Hoffmeister, a meeting with Andrews, and an interview with Williams.  (Defs.' Am. Br., Ex. A–2 at Attach. 4 [Hoffmeister Aff.].)  On June 11, 2002, Plaintiff Vasquez filed a complaint with the EEOC charging sexual harassment and discrimination.  (*Id.*, Ex. A–2 at Attach. 62 [Hoffmeister Aff.].)  Thus, Plaintiff Vasquez's June 11, 2002 EEOC complaint, April 23, 2002 letter, and the oppositions cited in the

-33-

letter are appropriate subjects of her retaliation complaint.  *See Robbins*, 186 F.3d at 1258 (a

plaintiff does not have to establish the validity of an underlying Title VII discrimination claim to

maintain a retaliation claim); *O'Neal*, 237 F.2d at 1255 (informal complaints to supervisors may

serve as protected opposition).

   The second prong of the *prima facie* case is the requirement that Plaintiff Vasquez's

protected oppositions and Defendants' adverse actions be contemporaneous or sequential.  *Berry*,

74 F.3d at 985.  By deductive logic, Plaintiff Vasquez must have made the complaints cited in the

letter on before April 23, 2002. (Defs.' Am. Br., Ex. A–2 at Attach. 4 [Hoffmeister Aff.].)

Plaintiff Vasquez filed her EEOC complaint on June 11, 2002.  (*Id.*, Ex. A–2 at Attach. 62

[Hoffmeister Aff.].)  Suspensions without pay can constitute adverse employment actions.

*Whittaker v. N. Ill. Univ.*, 424 F.3d 640 (7th Cir. 2005).  Further, "[d]isciplinary proceedings,

such as warning letters and reprimands can constitute [] adverse employment action[s]."  *Medina

v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005).  Plaintiff Vasquez received

negative job performance memoranda and suspensions without pay on November 11, 2002 and

January 3, 2003.  (Pls.' Resp. at 49–50.)  Accordingly, Plaintiff Vasquez has satisfied the second

prong.

   As to the third prong, a three-month span between protected opposition and adverse

action is insufficient, standing alone, to establish causation.  *Meiners*, 359 F.3d at 1231.  Five

months separate Plaintiff Vasquez's June 11, 2002 EEOC filing and her November 11, 2002

suspension.  As is evident, the time span between Plaintiff Vasquez's prior protected opposition

and Defendants' adverse actions is only greater.  The lack of temporal proximity militates against

finding causation in this case.  Beyond temporal proximity, Plaintiff Vasquez relies only on her

statement that "the disciplinary actions have been characterized as retaliation. This is accurate" to prove her claim. (Pls.' Br. at 50.) Conclusory allegations are insufficient to raise a genuine issue of fact. *Annett*, 371 F.3d at 1237. Plaintiff Vasquez has not raised a genuine issue of fact as to the existence of a causal connection between her protected opposition and her suspensions, and has thus failed to establish a *prima facie* case. Therefore, Defendants are entitled to summary judgment on Plaintiff Vasquez's claim for Title VII retaliation.

### d.    State Law Claims

This court has jurisdiction over Plaintiffs' federal law claims under federal question jurisdiction pursuant to 28 U.S.C. § 1331 (2006). The record before the court reveals that the parties are not diverse. (Compl.) Thus, the only basis for this court's jurisdiction over Plaintiffs' state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) (2006). I have dismissed Plaintiffs' federal law claims, which provided the sole basis for this court's original jurisdiction.

I decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss them without prejudice to refiling in state court. *See* 28 U.S.C. § 1367(c)(3) (2006) ("[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").

### 3.    Conclusion

Based on the foregoing it is therefore ORDERED as follows:

1.    Defendants' motion for summary judgment (# 65) is GRANTED.

2.      The clerk shall forthwith enter judgment in favor of Defendants and against

Plaintiffs, dismissing Plaintiffs' federal law claims as to all Defendants with prejudice.  Plaintiffs'

state law claims are dismissed without prejudice to allow refiling in state court. Defendants may

have costs by filing a bill of costs within eleven days of the date of this order.

3.      The hearing set for Friday, March 24, 2006, is VACATED.


Dated this 22nd day of March, 2006.


                                        BY THE COURT:


                                        s/ Edward W. Nottingham
                                        EDWARD W. NOTTINGHAM
                                        United States District Judge